## WEDGWOOD *v.* UNITED STATES (No. 1735).[1]

1. CAMEO NOT A PRECIOUS STONE.

   The lexicographic meaning of cameo does not depend upon whether the substance of which the completed article is composed is a precious stone or a shell. It is the product of cutting in a certain form, wrought upon either shell or precious stone. The process of conversion of a piece of shell into an article like a cameo can not entitle the completed article to be called in any just sense a precious stone simply because cameos may be, and often are, made of precious stones.

2. CONSTRUCTION, PARAGRAPH 357, TARIFF ACT OF 1913—"CAMEOS, AND OTHER PRECIOUS STONES."

   The language of paragraph 357, tariff act of 1913 ("diamonds, coral, rubies, cameos, and other precious stones"), can not be construed to mean that a cameo cut on shell is a precious stone.

3. CONSTRUCTION, PARAGRAPH 357, TARIFF ACT OF 1913—"IMITATION PRECIOUS STONES."

   The provision in paragraph 357, tariff act of 1913, for imitation precious stones may well be related to the first provision in the paragraph for precious stones rather than to the clause in which the word cameo appears; and it was not intended to relate to anything other than stones which in their natural state are precious stones.

4. IMITATION CAMEOS MOLDED OF EARTHENWARE.

   Earthenware molded in imitation of cameos is dutiable as "earthenware * * * ornamented or decorated in any manner, and manufactures in chief value of such ware not specially provided for" (par. 79, tariff act of 1913) and not as "imitation precious stones" (par. 357).

United States Court of Customs Appeals, February 2, 1917.

APPEAL from Board of United States General Appraisers, Abstract 39742.

[Affirmed.]

*B. A. Levett* for appellant.

*Bert Hanson*, Assistant Attorney General (*Robert Hardison*, special attorney, of counsel), for the United States.

[Oral argument Oct. 19, 1916, by Mr. Levett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in question in this suit consists of imitation cameos, which, unlike the genuine cameo, are not cut upon precious stones or shell but are produced by a molding process and imitate more or less accurately the genuine cameo. Duty was assessed upon the importation as "earthenware * * * ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for," under paragraph 79 of the act of 1913. They are claimed to be dutiable under the provisions of paragraph

357 as imitation precious stones. The contention of the importer was overruled by the board and the importer appeals to this court, presenting for decision the question of classification, as stated.

The questions presented are two: First, whether a cameo is a precious stone, and, second, whether the importation is an imitation of a precious stone. The latter question would seem to be wholly dependent upon the first, for if the cameo, whatever the substance upon which the cameo cutting has been done, is, by virtue of the process of cutting such substance, constituted a precious stone, the present importation sufficiently resembles such product to be properly classified as an imitation, so that the case must turn upon whether the cameo is, without regard to the substance furnishing its basis, a precious stone.

Murray's New English Dictionary defines cameo as—

> A precious stone having two layers of different colors, in the upper of which a figure is carved in relief, while the lower serves as a ground. For this purpose the ancients used the onyx, agate, etc., and especially the sardonyx, "a variety of chalcedony, consisting of alternate parallel layers of white and red chalcedony," which was carved so as to leave a white figure in relief on a red ground. Thence extended to all lapidary's work of the same kind; and in modern times ("by abuse," Littré says) to similar carving in shells of mollusks, of which the inner stratum is differently colored from the outer.

This evolution of the meaning of the term cameo is discussed in an opinion by De Vries, General Appraiser (T. D. 24581). The articles there considered were imitations of cameos. It was said, after reviewing at length the dictionary definitions of cameo, and noting the extension of the term to include within the term cameo cut or an article engraved upon a material other than precious stone:

> These authorities indicate a chronological increase of the kinds of materials used to make cameos, from that of the precious stones, to include that of shells, ivory, stone, and other suitable materials. To such an extent has this change progressed that the precious-stone cameos have largely fallen into disuse and been assigned a specific definition of "cameo duro." The authorities further indicate that the word is equally applicable to and descriptive of a process of cutting. * * *

> While it is true, therefore, that an imitation cameo or intaglio made to imitate a shell or ivory or other such articles may not be classed as imitation precious stones, but should be classed according to the material of composition, yet it would seem that in such cases as this, where the imitation is not only of the cameo but also of a precious stone, and, to be more precise, is an imitation of a precious stone cut in a recognized way (cameo and intaglio), an article well known in the trade and made dutiable as a class by the tariff act, and plainly included within the articles referred to by the words "imitation precious stones" (cut), such articles must be held imitation precious stones within that language.

From this it will be seen that the lexicographic meaning of cameo does not depend upon whether the substance of which the completed article is composed is a precious stone or shell. It is the product of cutting in a certain form, wrought upon either shell or precious

stone. Nor do we think it should be said that the working upon the foundation of shell can convert that substance into a precious stone.

The converse of this question was presented in Hahn v. United States (100 Fed., 635). In that case the merchandise consisted of small cups, shoe-hook and glove-hook handles, knife handles, paper weights, slabs for match boxes and for blotting papers, and similar articles. The articles were manufactured wholly of agate or of onyx. Precious stones of all kinds were made dutiable by the tariff act under consideration at 10 per cent, and agate, unmanufactured, was included in the free list. There was the usual provision for non-enumerated manufactured articles and also a similitude clause. The collector classified the importation as nonenumerated articles, and the importer claimed that they were dutiable by similitude at the same rate of duty which was levied upon precious stones. The Board of General Appraisers reversed the collector and sustained the importer's claim. The Circuit Court reversed the board and sustained the collector. The case was taken by appeal to the Court of Appeals of the Second Circuit, and after discussion, showing that agate and onyx are commercially known as precious stones, and citing the brief of the Government conceding that the articles were made of the same material as precious stones, the court proceeds:

This court further held in Erhardt v. Hahn, supra, that the term "precious stones" applied only to the mineral substances embraced within it while they remained stones, and that articles like those in suit had been advanced beyond that condition, and had become completed commercial articles known and recognized in trade by specific and distinctive names other than the name of the material, and have been put into a completed shape designed and adapted for particular uses.

The court thereupon considered the question of whether the merchandise was dutiable as a nonenumerated manufactured article or by similitude as precious stones. Concurring with the Board of General Appraisers, the court held that the goods were dutiable by similitude as precious stones and said:

It may at first seem startling to classify a shoe-hook handle with a diamond for duty purposes, but when it is made out of what is conceded to be a precious stone, the conclusion is not so absurd. A somewhat different mode of cutting would have changed the handles, paper weights, slabs, etc., into pendants for earrings, or stones suitable for mounting in bracelets or brooches, or as sleeve buttons, scarf pins, or some other of the articles of personal adornment known as "jewelry," and with which the idea of a precious stone is associated.

If the doctrine of this case be accepted and the conversion of precious stones into articles of utility can not change the character of the substance from precious stones, it would seem to follow that the process of conversion of a piece of shell into an article like a cameo can not entitle the completed article to be called in any just sense a precious stone simply because cameos may be, and often are, made of precious stones.

In T. D. 25512 the merchandise consisted of shell cameos, which were returned by the surveyor as parts of jewelry. The importers claimed that the articles should be admitted as precious stones, and alternately that they should be held dutiable as manufactures of shell. It was found that by a process of manufacture the merchandise had been made into articles very similar in appearance to stone cameos, which had been held to be precious stones cut but not set. Referring to the paragraph under consideration, it was said:

Paragraph 435 provides for diamonds and other precious stones advanced in condition or value from their natural state, etc. The language of this paragraph is not ambiguous, hence a constructive meaning that is not warranted by the choice of language employed by Congress is not permissible. The words "advanced in value or condition from their natural state" imply that the article so advanced must in its natural state have been a diamond or other precious stone; and whatever may be said of a pearl, it must be admitted that shells in their natural state are not precious stones.

This case was cited and its principle approved in T. D. 26506.

In T. D. 30068, in an opinion by Sharretts, General Appraiser, who also wrote the opinion in T. D. 25512, on a showing by commercial testimony that shell cameos, designed for sets for jewelry, were known as precious stones by the trade, the board reversed the holding in T. D. 25512, and among other things said:

In this connection it will be observed that paragraph 449 of the present tariff act of 1909 again in terms includes cameos among precious stones. This may well be taken as a legislative interpretation that, although the act of 1897 is silent on the subject, cameos are to be regarded, in accordance with trade understanding, as precious stones. We find they are such in fact, and sustain the claim in the protest.

This latter decision was rendered in October, 1909, but arose under the act of 1897, and so far as it contains a construction of the act of 1909 was therefore dictum.

The question came before the board again in Abstract 28797 (T. D. 32618), a decision rendered in May, 1912, and before the enactment of the present statute. It was there held that a head in relief, made of china, in resemblance and imitation of a cameo, was not dutiable as an imitation precious stone, but as decorated china under paragraph 93.

In the present case the opinion apparently quotes from the unpublished opinion in the case last cited, and of that case said:

This board held that paragraph 449 of the act of 1909, which is similar to paragraph 357 of the present act, made no provision for imitation cameos; it provides for various precious stones and for cameos; it also provides for imitation precious stones. A cameo, however, is not a precious stone, but is an engraving in relief on stone or shell.

It will be seen that it is difficult to harmonize the board's decisions. The last decision of the board, however, prior to the enactment of the present statute, sustained the contention made by the Government herein. The court is disposed, in these circumstances, to follow the

logic of Hahn *v.* United States, *supra,* and to hold, as we do hold, that the term "precious stones" is in common speech applied to the substance and not to the form which an article made or carved out of a relatively cheap substance assumes under the hand of the artisan.

A contention is based upon the wording of the statute that the Congress has given the word cameos a legislative classification as precious stones. This would be forceful if we were able to attribute to Congress a purpose to classify a process or the result of manipulation as a precious stone. To get the force of the contention, the whole of paragraph 357 should be quoted:

357. Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, whether in their natural form or broken, and bort; any of the foregoing not set, and diamond dust, 10 per centum ad valorem; pearls and parts thereof, drilled or undrilled, but not set or strung; diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry, 20 per centum ad valorem; imitation precious stones, including pearls and parts thereof, for use in the manufacture of jewelry, doublets, artificial, or so-called synthetic or reconstructed pearls and parts thereof, rubies, or other precious stones, 20 per centum ad valorem.

It will be noted that down to the first semicolon it deals with diamonds and other precious stones, rough or uncut, in their natural state. Clearly cameos would not be classifiable under this. The next provision relates to diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry. It is true that in this connection cameos are made dutiable with precious stones cut, but it does not make a precious stone of a cameo cut on shell nor can such intention be ascribed to Congress without clear demonstration. But the most that can be said is that it is dutiable, as precious stones are dutiable, at 20 per cent.

Then follows the provision for imitation precious stones. Now, here the "imitation precious stones" relate to substances, imitation precious stones, including pearls and parts thereof, used for manufacturing jewelry. This can well be related to the first provision in the paragraph for precious stones rather than to the clause in which the word cameo appears.

Taking the arrangement of the paragraph as a whole, we find no convincing evidence that the words "imitation precious stones" were intended to relate to anything other than stones which in their natural state were precious stones.

An effort was made to show that imitation cameos were known to the trade as imitation precious stones, but the weight of the testimony of importer's witnesses is that the trade meaning does not differ from the common meaning.

The decision of the board is, on the whole record, *affirmed.*